# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |  |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | No. | 3:09-cr-00240-3 |
|  | ) |  | 3:09-cr-00240-11 |
| v. | ) |  | 3:09-cr-00240-16 |
|  | ) |  | 3:09-cr-00240-17 |
| PAUL MCQUIDDY; TIERRA YOUNG; | ) |  | 3:09-cr-00240-23 |
| OMEGA HARRIS; LEONARD BAUGH; | ) |  |  |
| PATRICK SCOTT; | ) | Judge Nixon |  |

## ORDER

Pending before the Court are Motions to Dismiss for Vindictive Prosecution and Abuse of Grand Jury ("Motions to Dismiss"), filed by Defendants Omega Harris, Paul McQuiddy, and Leonard Baugh. (Doc. Nos. 1566; 1582; 1646.) Defendants Patrick Scott and Tierra Young have joined the Motions. (Doc. Nos. 1663; 1781.) Mr. McQuiddy filed an ex parte, under seal document in support. (Doc. No. 1584.) The Government filed two Responses opposing the Motions. (Doc. Nos. 1586; 1682.) For the reasons given below, the Motions are **DENIED**.

## I. BACKGROUND

Mr. Harris filed the first Motion to Dismiss on December 31, 2012. (Doc. No. 1566.) Mr. McQuiddy filed the next Motion to Dismiss on January 2, 2013 (Doc. No. 1582), to which the Government filed a Response on the same day (Doc. No. 1586). Mr. Baugh filed the last of the instant Motions on January 15, 2013. (Doc. No. 1646.) The Government filed a combined Response to Mr. Harris and Mr. Baugh's Motions on January 18, 2013. (Doc. No. 1682.)

On September 30, 2009, a Grand Jury returned the Original Indictment in this case against Defendant Christopher Conyers. (Doc. No. 10.) Since that time, the Government has filed a range of charges including multiple robberies in violation of the Hobbs Act, drug offenses, obstruction of justice charges, and conspiracies. (*See* Doc. Nos. 13; 23; 63; 94; 130;

1

295; 708; 807; 1408.)  The Government has charged the above-captioned Defendants with an increasing number of counts, as the case has moved forward.  The Ninth Superseding Indictment filed on October 31, 2012, added three new charges: Count 41, conspiracy to commit a robbery under the Hobbs Act between September and October 2009; Count 42, possession of a firearm in furtherance of a crime of violence between September and October 2009; and Count 43, conspiracy to commit prescription drug fraud beginning in or near July 2009.  (Doc. No. 1408 at 24–26.)  Mr. McQuiddy, Mr. Baugh, and Mr. Scott are among the Defendants charged with Counts 41 and 42, and Ms. Young and Mr. Harris were charged with Count 43.  (*Id.*)

   *A.  Charges Against Mr. McQuiddy*

   Mr. McQuiddy was first charged with four counts in the Second Superseding Indictment on January 6, 2010: (1) conspiracy to commit a Hobbs Act robbery against "Lil Ced" (Count 13[1]); (2) possession of a firearm in furtherance of the "Lil Ced" robbery (Count 14); (3) conspiracy to distribute controlled substances (Count 15); and (4) possession of a firearm in furtherance of a drug trafficking crime (Count 17).  (Doc. No. 23.)

   In the Third Superseding Indictment, filed on March 31, 2010, the Government charged Mr. McQuiddy with two additional counts: (1) conspiracy to commit a Hobbs Act robbery of a vehicle emissions inspection station (Count 19) and (2) possession of a firearm in furtherance of the robbery (Count 20).  (Doc. No. 63.)

   In the Seventh Superseding Indictment, filed on October 19, 2011, the Government added seven new charges against Mr. McQuiddy: (1) conspiracy to commit a Hobbs Act robbery against "Lil Wee Wee" (Count 16); (2) conspiracy to commit a Hobbs Act robbery against Brice N. Marchbanks (Count 30); (3) possession and discharge of a firearm in furtherance of the

---

[1] Certain counts have been assigned different numbers in different indictments.  The Court refers to all charges as they are numbered in the Ninth Superseding Indictment (Doc. No. 1409), which is the current charging instrument.

Marchbanks robbery (Count 31); (4) conspiracy to retaliate against Adam Battle (Count 33); (5) physical retaliation against Adam Battle (Count 34); (6) conspiracy to tamper with Adam Battle (Count 35); and (7) tampering with Adam Battle (Count 36). (Doc. No 708.)

In the Ninth Superseding Indictment, filed on October 31, 2012, the Government added two new charges against Mr. Mcquiddy, including: (1) conspiracy to commit a Hobbs Act robbery against "Fat Chris" (Count 41) and (2) possession of a firearm in furtherance of the "Fat Chris" robbery (Count 42). (Doc. No. 1408.)

B. *Charges Against Ms. Young*

Ms. Young was first charged with two counts in the Third Superseding Indictment on March 31, 2010: (1) conspiracy to commit a Hobbs Act robbery against "Lil Ced" (Count 13) and (2) possession of a firearm in furtherance of the "Lil Ced" robbery (Count 14). (Doc. No. 63.)

In the Sixth Superseding Indictment, filed on December 8, 2010, the Government added two charges against Ms. Young: (1) conspiracy to distribute controlled substances (Count 23) and (2) position with intent to distribute controlled substances within 1000 feet of a public housing facility (Count 24). (Doc. No. 295.)

In the Seventh Superseding Indictment, filed on October 19, 2011, the Government added three charges against Ms. Young: (1) conspiracy to distribute controlled substances (Count 15); (2) conspiracy to commit a Hobbs Act robbery against "Lil Wee Wee" (Count 16); and (3) possession of a firearm in furtherance of a drug trafficking crime (Count 17). (Doc. No. 708.)

In the Ninth Superseding Indictment, filed on October 31, 2012, the Government added the additional charge against Ms. Young of conspiracy to commit prescription drug fraud (Count 43). (Doc. No. 1408.)

*C. Charges Against Mr. Harris*

Mr. Harris was first charged with three counts in the Fifth Superseding Indictment on May 27, 2010: (1) conspiracy to commit a Hobbs Act robbery against "Lil Ced" (Count 13); (2) possession of a firearm in furtherance of the "Lil Ced" robbery (Count 14); and (3) being a felon in possession of a firearm (Count 18). (Doc. No. 130.)

In the Seventh Superseding Indictment, filed on October 19, 2011, the Government added five new charges against Mr. Harris: (1) conspiracy to commit a Hobbs Act robbery in or around Lavergne, TN (Count 5); (2) possession of a firearm in furtherance of the Lavergne robbery (Count 6); (3) conspiracy to distribute controlled substances (Count 15); (4) conspiracy to commit a Hobbs Act robbery against "Lil Wee Wee" (Count 16); and (5) possession of a firearm in furtherance of a drug trafficking crime (Count 17). (Doc. No. 708.)

In the Ninth Superseding Indictment, filed on October 31, 2012, the Government added the additional charge against Mr. Harris of conspiracy to commit drug prescription drug fraud (Count 43). (Doc. No. 1408.)

*D. Charges Against Mr. Baugh*

Mr. Baugh was first charged with four counts in the Fifth Superseding Indictment on May 27, 2010: (1) conspiracy to commit a Hobbs Act robbery against "Lil Ced" (Count 13); (2) possession of a firearm in furtherance of the "Lil Ced" robbery (Count 14); (3) conspiracy to distribute controlled substances (Count 15); and (4) possession of a firearm in furtherance of a drug trafficking crime (Count 17). (Doc. No. 130.)

In the Sixth Superseding Indictment, filed on December 8, 2010, the Government added the additional charge against Mr. Baugh of conspiracy to distribute controlled substances (Count 23). (Doc. No. 295.)

In the Seventh Superseding Indictment, filed on October 19, 2011, the Government added seven new charges against Mr. Baugh: (1) conspiracy to commit a Hobbs Act robbery against "Lil Wee Wee" (Count 16); (2) conspiracy to retaliate against Adam Battle (Count 33); (3) physical retaliation against Adam Battle (Count 34); (4) conspiracy to tamper with Adam Battle (Count 35); (5) tampering with Adam Battle (Count 36); (6) conspiracy to tamper with federal inmate "CN" (Count 37); and (7) tampering with federal inmate "CN" (Count 38). (Doc. No 708.)

In the Ninth Superseding Indictment, filed on October 31, 2012, the Government added two new charges against Mr. Baugh: (1) conspiracy to commit a Hobbs Act robbery against "Fat Chris" (Count 41) and (2) possession of a firearm in furtherance of the "Fat Chris" robbery (Count 42). (Doc. No. 1408.)

### E. Charges Against Mr. Scott

Mr. Scott was first charged in the Seventh Superseding Indictment on October 19, 2011, with conspiracy to tamper with "Gabby" (Count 32). (Doc. No. 708.)

In the Ninth Superseding Indictment, filed on October 31, 2012, the Government added two new charges against Mr. Scott: (1) conspiracy to commit a Hobbs Act robbery against "Fat Chris" (Count 41) and (2) possession of a firearm in furtherance of the "Fat Chris" robbery (Count 42). (Doc. No. 1408.)

### F. Defendants' Speedy Trial Motions

Mr. Harris filed the first motion to dismiss for speedy trial violations ("First Speedy Trial Motion") on May 21, 2012. (Doc. No. 1104.) Subsequently, Mr. Baugh, Mr. McQuiddy, Ms. Young, Mr. Scott, and Defendants Michael Devonn Davis, Monterius Pollard, and Howard Coleman, joined the First Speedy Trial Motion. (Doc. Nos. 1330; 1338; 1608.) At the time Mr.

5

Harris filed the First Speedy Trial Motion, the most recent charging instrument was the Eighth Superseding Indictment, filed on November 30, 2011 (Doc. No. 807), and trial was scheduled for August 14, 2012 (Doc. No. 1064). On August 13, 2012, the Court continued the trial to January 29, 2013. (Doc. No. 1241.)

Mr. McQuiddy and Mr. Baugh jointly filed a motion to dismiss on speedy trial grounds ("Second Speedy Trial Motion") on October 29, 2012. (Doc. No. 1400.) Mr. Scott and Defendants Anthony Johnson, Brice Marchbanks, Christopher Moody, and Thomas Branum, joined the Second Speedy Trial Motion. (Doc. Nos. 1505; 1521; 1530; 1539; 1540.) Two days after Mr. McQuiddy and Mr. Baugh filed the Second Speedy Trial Motion, the Government filed the Ninth Superseding Indictment. (Doc. No. 1408.)

Ms. Young filed a motion to dismiss on speedy trial grounds ("Third Speedy Trial Motion") on November 26, 2012 (Doc. No. 1474). Defendant Howard Coleman joined the motion. (Doc. No. 1608.) Defendant Lachaunti Williams filed the most recent motion to dismiss on speedy trial grounds ("Fourth Speedy Trial Motion") on November 28, 2012. (Doc. No. 1489.) The Court subsequently denied the four Speedy Trial Motions on January 28, 2013.

## II.  LEGAL STANDARD

### A.  Vindictive Prosecution

The Sixth Circuit has held that "[d]ue process prohibits an individual from being punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *Id.* at 372 (citation omitted). The purpose of the vindictive prosecution doctrine is to prevent prosecutors from retaliating against defendants by charging them with more severe charges as a result of their having asserted a

6

protected right. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("[D]ue process violation[s] in [vindictive prosecution] cases lay not in the possibility that a defendant might be deterred from the exercise of a legal right . . . but rather in the danger that the state might be retaliating against the accused for lawfully attacking his conviction.") (internal citations omitted); *see also United States v. Andrews*, 633 F.2d 449, 455 (6th Cir. 1980) (en banc).

Due process, however, "is not offended by all possibilities of increased punishment," *Blackledge v. Perry*, 417 U.S. 21, 27 (1974); *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005); rather, it protects against only those actions that evince either "actual vindictiveness" or "a realistic likelihood of vindictiveness," *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003) (internal citation omitted). A defendant can show actual vindictiveness by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," however such a showing is "exceedingly difficult" to make. *Id.*

Alternatively, a defendant can demonstrate a realistic likelihood of vindictiveness by showing: "(1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; (4) the intent to punish the defendant for exercise of the protected right." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (citing *Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 722 (6th Cir. 1999)). "Presumably, if the first three elements are present, this may help establish grounds to believe the fourth is present, that there is the required 'realistic likelihood of vindictiveness,' which the government would have to rebut." *Suarez*, 263 F.3d at 479 (internal citations omitted). Once a defendant establishes a realistic likelihood of vindictiveness, the burden shifts to the government to justify the challenged action. *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001) (citing

7

*Andrews*, 633 F.2d at 456). "[O]nly objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness." *Andrews*, 633 F.2d at 456.

Ultimately, a court's finding of a "realistic likelihood of vindictiveness" allows the court to bar charges "without the need to find that the prosecutor acted in bad faith." *Id.* at 455 (internal quotation omitted). "If, after carefully assessing a prosecutor's seemingly retaliatory adding of charges, a court finds that the situation before it presents a realistic likelihood of vindictiveness, the ordinary remedy is to bar the augmented charge." *Id.*

While the Sixth Circuit has held that prosecutorial vindictiveness can be exhibited by the addition of charges following pretrial assertions of protected rights, *Id.* at 454, the Supreme Court has recognized that "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor" and "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and deter," *Goodwin*, 457 U.S. at 381. The mere existence of a superseding indictment "bringing additional charges is not sufficient to be presumptively unreasonable." *Suarez*, 263 F.3d at 480 (citations omitted). Furthermore,

> [a] prosecutor who adds on extra charges after the exercise of a procedural right is arguably acting less vindictively than a prosecutor who substitutes a more severe charge for a less severe one. In the first situation, a prosecutor might well have made an honest mistake. This is especially true where a defendant has committed multiple criminal acts. However, in the second situation, the prosecutor will have already exercised his discretion, and the probability that the prosecutor acted vindictively is higher.

*Andrews*, 633 F.2d at 454 (citation omitted). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charges to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher*, 434 U.S. at 364.

8

### B. Grand Jury Abuse

"It is a firmly entrenched rule that once a defendant has been indicted, a prosecutor may not use a grand jury's investigative powers for the purpose of securing additional evidence against the defendant for use in the upcoming trial." *In re Grand Jury Proceedings*, 632 F.2d 1033, 1041 (3d Cir. 1980); *see United States v. Woods*, 544 F.2d 242, 249 (6th Cir. 1976)). By contrast, the Government may use a grand jury investigation following an indictment "to investigate whether a defendant committed crimes not covered in the indictment." *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1214 (11th Cir. 2009).

The Defendant bears the burden of establishing that an abuse has occurred, *United States v. Breitkreutz*, 977 F.2d 214, 217 (6th Cir. 1992) (citation omitted), and "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300–01 (1991) (citations omitted). "So long as it is not the sole or dominant purpose of the grand jury to discover facts relating to [a defendant's] pending indictment, the Court may not interfere with the grand jury's investigation." *United States v. George*, 444 F.2d 310, 314 (6th Cir. 1971). Where a defendant shows nothing more than "mere speculation," or his "own unproved suspicions," he has not met his burden. *Id.*; *Woods*, 544 F.2d at 250.

## III.  ANALYSIS

### A. Vindictive Prosecution

Defendants argue that the charges added in the Ninth Superseding Indictment (Counts 41–43) are the product of vindictive prosecution because The Government added the counts to punish Defendants for exercising their right to a speedy trial. (Doc. Nos. 1566 at 5–6; 1582 at 3–4; 1646 at 4–5.) Defendants assert that the Government had a stake in Defendants exercising

9

their speedy trial rights because, had Defendants prevailed on their motions to dismiss, the Court would have dismissed some or all of the charges against them. (Doc. No. 1582 at 4.)

Defendants allege the Government's conduct in filing Counts 41–43 was unreasonable because the Government "held back" charging Defendants with Counts 41–43 for three years, even though it had evidence of the alleged crimes in as early as 2010. (Doc. Nos. 1566 at 2; 1582 at 4.) Mr. McQuiddy and Mr. Harris argue that the Government's decision to file the Ninth Superseding Indictment after Defendants filed the Speedy Trial Motions indicates that the new charges were filed in retaliation for their assertions of protected rights. (Doc. No. 1566 at 3; 1582 at 4.) Finally, Mr. McQuiddy and Mr. Baugh emphasize that the increase in Defendants' potential criminal exposure from the new charges supports a finding that the Government's conduct was unreasonable. (Doc. Nos. 1566 at 2–3; 1646 at 4.)

The Government does not deny that Defendants exercised a protected right when they filed the Speedy Trial Motions. (Doc. No. 1682 at 3.) However, the Government argues that Defendants have failed to satisfy the second *Suarez* factor, because the right to file a pretrial motion is a procedural right that, under *Suarez* and *Goodwin*, is unlikely to provoke the Government to respond by seeking to "penalize and deter." (*Id.* (citing *Goodwin*, 457 U.S. at 381; *Suarez*, 263 F.3d at 479–80).) Finally, the Government argues that Defendants do not adequately demonstrate that the Government's conduct in filing new charges was unreasonable. (*Id.* at 4.) The Government states that filing additional charges based on separate criminal acts is not unreasonable, but rather is normal during complex conspiracy cases. (*Id.*) The Government notes that it is not required to file charges as soon as it obtains evidence of a crime, and that here, it was within the bounds of its prosecutorial discretion in filing the Ninth Superseding

Indictment prior to the expiration of the statute of limitations for the charged crimes. (*Id.* at 4–5.)

Because Defendants do not allege the Government acted with actual vindictiveness, the Court considers only whether they have established a realistic likelihood of vindictiveness. *See Poole*, 407 F.3d at 774. The Court assesses whether Defendants have met their burden under the *Suarez* factors: (1) exercise of a protected right; (2) prosecutorial stake; (3) unreasonableness of the Government's conduct; and (4) intent to punish the Defendants for exercising protected rights. *Suarez,* 263 F.3d at 479.

The Court finds Defendants exercised a protected right when they filed motions to dismiss based on violations of their speedy trial rights, because the right to file a pretrial motion to dismiss is a procedural right. *See Suarez*, 263 F.3d at 479 ("Since Suarez had a right to file [motions to suppress and dismiss], arguably he has satisfied the first element of his claim.").

However, the Court finds that Defendants have not, and cannot, offer sufficient evidence that the Government had a significant prosecutorial stake in Defendants merely filing the motions to dismiss. The Supreme Court has cautioned against "adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting," and has noted specifically that "in the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has broader significance." *Goodwin*, 457 U.S. at 381. The *Goodwin* Court recognized that "[d]efense counsel routinely file pretrial motions" and that "invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates." *Id.* Further, the Sixth Circuit has found that, while a defendant has a protected right

to file pretrial motions, "the additional burden on the prosecution from the motions in proportion to the burden for the upcoming trial itself is rather minimal." *Suarez*. 263, F.3d at 479–80.

At the time the Government filed the Ninth Superseding Indictment, the Court had not yet ruled on Defendants' Speedy Trial Motions. Therefore, the only "right" in which the Government could have had a stake, was Defendants' right to *file* the Speedy Trial Motions. The additional burden on the Government, caused by Defendants filing the Speedy Trial Motions, was simply in drafting responses to the motions. Had the Court granted the Speedy Trial Motions before the Government filed the Ninth Superseding Indictment, the analysis of prosecutorial stake may have come out differently. However, under the facts of the case, the Court finds the burden on the Government associated with Defendants filing the Speedy Trial Motions was minimal, and therefore does not rise to the level of substantial prosecutorial stake required to find a reasonable likelihood of vindictiveness.

The Court also finds that Defendants have not adequately demonstrated that the Government acted unreasonably when it filed the Ninth Superseding Indictment. The Court agrees with Defendants that adding Counts 41–43 increased Defendants' potential criminal penalties. However, the new counts stem from incidents not charged in previous indictments. "Generally, a potentially vindictive superseding indictment must add additional charges or substitute more severe charges *based on the same conduct* charged less heavily in the first indictment." *Suarez*, 263 F.3d at 480 (emphasis added) (citation omitted). Here, Counts 41–43 added charges related to a new Hobbs Act violation and prescription drug fraud not contained in Counts 1–40. Because the new charges arose from incidents separate from conduct previously charged, the Court finds the Government was not acting unreasonably when it filed the Ninth Superseding Indictment.

The Court further finds that Defendants' argument that the Government's conduct was unreasonable because it had evidence of alleged crimes for several years before it filed charges, also fails to show an abuse of prosecutorial discretion. The Supreme Court has held that "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Goodwin*, 457 U.S. at 382. "A charging decision does not levy an improper 'penalty' unless it results *solely* from the defendant's exercise of a protected legal right rather than the prosecutor's normal assessment of the societal interest in prosecution." *Id.* at 380 n.11 (emphasis added) (citation omitted). Here, the Government had the discretion to file additional charges against Defendants. Whether Defendants can show that the Government could have brought charges sooner than it did is inapposite. The Court finds that the Government was acting within its discretion when it filed the Ninth Superseding Indictment, and therefore did not act unreasonably.

Because Defendants have not met the first three *Suarez* factors, the Court finds they cannot establish a realistic likelihood of vindictiveness. Therefore, the Court finds the Government did not violate Defendants' Due Process rights when it filed the Ninth Superseding Indictment.

### B. Grand Jury Abuse

Mr. Harris alleges that the Government has used the series of superseding indictments in this case for strategic delay and to gain a tactical advantage over Defendants. (Doc. No. 1566 at 6.) Specifically, Mr. Harris highlights the proximity between superseding indictments and pending trial dates in this case, as indicative of the Government's improper use of the grand jury to conduct discovery. (*Id.*) Mr. Harris argues that, if the Government has used the grand jury to investigate charges currently pending, it should be required to prove both that its investigation

was not primarily targeted at the pending indictment and that it had a particularized need to conduct continued investigation prior to trial. (*Id.* at 7.)

Although Mr. Harris argues that the timing between indictments and trial dates in this case is indicative of grand jury abuse, even if the Court were to find a pattern in timing, no evidence of what occurred during the grand jury proceedings has been presented. Timing alone is not enough to rebut the presumption that the grand jury proceedings were appropriately conducted. "A presumption of regularity attaches to a grand jury's proceedings and [defendants] have the burden of demonstrating that an irregularity occurred." *Woods*, 544 F.2d at 250 (citation omitted). Establishing firm proof that the Government used the grand jury to conduct discovery in this case would amount to an understandably difficult challenge for Mr. Harris, given the secrecy surrounding the grand jury proceedings. However, Mr. Harris's assertion regarding the temporal proximity of indictments and trial dates does not suggest that the Government's dominant purpose in grand jury proceedings was to investigate previously charged conduct. Mr. Harris has not met his burden as the Court finds he has offered no evidence to suggest the Government abused the grand jury process. Once the Government discloses of grand jury testimony during trial, Mr. Harris may refile his motion, stating objective evidence to support an allegation of grand jury abuse.

## IV.  CONCLUSION

For the reasons stated above, the Motions (Doc. Nos. 1566; 1582; 1646) are **DENIED**.

It is so ORDERED.

Entered this the 28 day of January, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

14