# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| | ) | No.    3:09-cr-00240-3 |
| **UNITED STATES OF AMERICA** | ) | 3:09-cr-00240-4 |
| | ) | 3:09-cr-00240-6 |
| **v.** | ) | 3:09-cr-00240-8 |
| | ) | 3:09-cr-00240-9 |
| **PAUL MCQUIDDY; HOWARD COLEMAN;** | ) | 3:09-cr-00240-10 |
| **THOMAS BRANUM; MONTERIUS POLLARD;** | ) | 3:09-cr-00240-11 |
| **CECIL WHITMON III;** | ) | 3:09-cr-00240-16 |
| **MICHAEL DEVONN DAVIS; TIERRA YOUNG;** | ) | 3:09-cr-00240-17 |
| **OMEGA HARRIS; LEONARD BAUGH;** | ) | 3:09-cr-00240-20 |
| **LACHAUNTI WILLIAMS;** | ) | 3:09-cr-00240-21 |
| **CHRISTOPHER MOODY; PATRICK SCOTT;** | ) | 3:09-cr-00240-23 |
| **ANTHONY JOHNSON** | ) | 3:09-cr-00240-25 |
| | ) | **Judge Nixon** |

## ORDER

Pending before the Court are Motions to Dismiss for Speedy Trial Violations ("Motions

to Dismiss"), filed by Defendants Omega Harris, Paul McQuiddy, Leonard Baugh, Tierra

Young, and Lachaunti Williams. (Doc. Nos. 1104; 1400; 1464; 1474; 1489.) Defendants

Monterius Pollard, Cecil Whitmon, III, Michael Devonn Davis, Patrick Scott, Anthony Johnson,

Christopher Moody, Thomas Branum, and Howard Coleman have joined the Motions. (Doc.

Nos. 1330; 1338; 1505; 1521; 1539; 1540; 1608.) Defendants Harris, McQuiddy, Whitmon,

Baugh, Young, and Williams have filed Memoranda in Support (Doc. Nos. 1105; 1531; 1404;

1413; 1466; 1475; 1490.) Defendant Harris has also filed a Motion to Reassert the Motion to

Dismiss. (Doc. No. 1234.) The Government filed a Response opposing Mr. Harris's Motion to

Dismiss. (Doc. No. 1204.) For the reasons stated below, the Motions are **DENIED**.

## I.    BACKGROUND

Defendants in this case were charged at different times and in various superseding indictments. The Court will first set forth when each Defendant was brought into the case, then will highlight significant events affecting the Motions to Dismiss.

A. *Dates of Indictment and Arraignment*

    1.    <u>First Superseding Indictment</u>

Defendants Christopher Conyers and Faith Readus were first arraigned on the First Superseding Indictment, which was filed on October 14, 2009. Mr. Conyers was arrested on September 11, 2009, and arraigned on October 15, 2009. Ms. Readus was arrested on September 25, 2009, and arraigned on October 29, 2009.

    2.    <u>Second Superseding Indictment</u>

Defendants Tomeka Coleman, Howard Coleman, and Paul McQuiddy were first arraigned on the Second Superseding Indictment, which was filed on January 6, 2010. Ms. Coleman was arrested on January 11, 2010, and arraigned the same day. Mr. Coleman was arrested on January 19, 2010, and arraigned the same day. Mr. McQuiddy was arrested on December 18, 2009, and arraigned on January 21, 2010.

    3.    <u>Third Superseding Indictment</u>

Defendants Cecil Whitmon III and Thomas Branum were first arraigned on the Third Superseding Indictment, which was filed on March 31, 2010. Mr. Whitmon was arrested on April 19, 2010, and arraigned the same day. Mr. Branum was arrested on January 27, 2010, and arraigned on April 23, 2010.

    4.    <u>Fourth Superseding Indictment</u>

Defendants Samantha Collins and Jermaine Smith were first arraigned on the Fourth Superseding Indictment, which was filed on April 29, 2010. Ms. Collins was arrested on May

2

24, 2010, and arraigned the same day. Mr. Smith was arrested on May 26, 2010, and arraigned the same day.

     5.    <u>Fifth Superseding Indictment</u>

Defendants Adam Battle, James Lamont Oliver, Jr., Monterius Pollard, Michael Devonn Davis, Omega Harris, Tierra Young, Antonio Lee, and Akin Floyd were first arraigned on the Fifth Superseding Indictment, which was filed on May 27, 2010. Mr. Battle was arrested on June 22, 2010, and arraigned the same day. Mr. Oliver was arrested on April 29, 2010, and arraigned on June 14, 2010. Mr. Pollard was arrested on August 5, 2010, and arraigned on August 10, 2010. Mr. Davis was arrested on August 13, 2010, and arraigned on August 18, 2010. Mr. Harris was arrested on August 19, 2010, and arraigned on September 2, 2010. Mr. Lee and Ms. Young were arrested on October 29, 2010, and arraigned on November 1, 2010. Mr. Floyd was arrested on November 1, 2010, and arraigned the same day.

     6.    <u>Sixth Superseding Indictment</u>

Defendants Lachaunti Williams, Lasondra Dowell, Bionca Butler, Leonard Baugh, and Christopher Moody were first arraigned on the Sixth Superseding Indictment, which was filed on December 8, 2010. Mr. Williams and Ms. Dowell were arrested on December 14, 2010, and arraigned the same day. Ms. Butler was arrested on August 6, 2010, and arraigned on December 23, 2010. Mr. Baugh was arrested on August 27, 2010, and arraigned on January 7, 2011. Mr. Moody was arrested on February 11, 2011, and arraigned on February 16, 2011.

     7.    <u>Seventh Superseding Indictment</u>

Defendants Chanita Whitlow, Patrick Scott, and Brice N. Marchbanks were first arraigned on the Seventh Superseding Indictment, which was filed on October 19, 2011. Ms. Whitlow was arrested on November 1, 2011, and arraigned the same day. Mr. Scott was arrested

on October 26, 2011, and arraigned on November 3, 2011. Mr. Marchbanks was arrested on October 26, 2011, and arraigned on November 9, 2011.

### 8. Eighth Superseding Indictment

Defendants Thomas L. Carey, Jr., Anthony Johnson, and James Campbell were first arraigned on the Eighth Superseding Indictment, which was filed on November 30, 2011. Mr. Carey was arrested on December 15, 2011, and arraigned on December 20, 2011. Mr. Johnson was arrested on January 4, 2012, and arraigned the same day. Mr. Campbell was arrested on April 4, 2012, and arraigned on April 11, 2012.

The dates above represent when Defendants were first charged in this case. Although each Defendant is categorized by the first indictment he or she was charged under, several defendants were first named in prior indictments. This discrepancy is due to gaps in the period of time between when indictments were filed and when the Defendants were arrested.

### B. Continuances and Motions Following Arraignment

#### 1. Continuances

Various Defendants filed numerous continuances in this case, all of which were granted to serve the ends of justice pursuant to 18 U.S.C. § 3161(h)(7)(A).

The Court first scheduled trial for the above-captioned Defendants for February 16, 2010. (Doc. No. 49.) On February 2, 2010, Mr. McQuiddy filed a motion to continue along with a speedy trial waiver. (Doc. No. 50.) Following Mr. McQuiddy's motion, Mr. Coleman and Mr. Conyers also filed motions to continue trial and speedy trial waivers. (Doc. Nos. 54; 55.) The Court granted the continuance on February 12, 2010—and per Mr. McQuiddy's request that the trial be scheduled at least four months out—scheduled a new trial date of July 27, 2010. (Doc. No. 57.) The Court found that the ends of justice were served by the continuance, based on the

4

Defendants' need for additional time to receive and review voluminous discovery that was still forthcoming from the Government at the time of the continuance.

Less than a week before the new trial date, Mr. McQuiddy filed another motion to continue the trial and another speedy trial waiver, again requesting a continuance of at least four months based on the Government's filing a Fifth Superseding Indictment and the voluminous discovery that had been received. (Doc. No. 186.) Five other Defendants also filed motions to continue trial and speedy trial waivers. (Doc. Nos. 187–90; 192.) The Court granted the motions and continued the trial to January 25, 2011, finding that a continuance served the ends of justice, based on the following facts: (1) the Fifth Superseding Indictment had been filed only eight weeks prior to trial, with several co-defendant names remaining redacted from the Indictment less than one week prior to trial; (2) the Fourth and Fifth Superseding Indictments joined seven new Defendants in the case, four of whom had not yet been arraigned as of the day before the scheduled trial date; and (3) Defendants stated that the volume of phone calls turned over by the Government in discovery would potentially take more than 100 hours for Defendants to review and discuss with counsel. (*See* Doc. No. 195.)

On December 23, 2010, Ms. Coleman filed a motion to continue the January 25 trial date based on the Government filing a Sixth Superseding Indictment, and the volume of discovery to review. (Doc. No. 343.) The Court granted the motion and continued the trial to April 5, 2011, finding a continuance again served the ends of justice because the Sixth Superseding Indictment—which joined four new defendants and added six additional counts to the case—had been filed less than seven weeks before the start of trial, and one of the newly added Defendants had not yet been arraigned as of the day the Court granted the motion. (*See* Doc. No. 358.)

5

One month before the April 5 trial date, Mr. Smith filed a motion to continue and a proposed order, requesting the trial be continued to November 1, 2011. (Doc. Nos. 440; 442.) Counsel for Mr. Smith represented that counsel for Mr. Conyers, Ms. Readus, Mr. Coleman, Ms. Coleman, Mr. Branum, Mr. Battle, Mr. Whitmon, Mr. Davis, Ms. Young, Mr. Scott, Mr. Floyd, Ms. Collins, Mr. Lee, Mr. Baugh, and Mr. Moody had been contacted and had no objections to the continuance. (Doc. No. 442.) Mr. McQuiddy subsequently filed a notice consenting to the continuance of trial until November 1, 2011 (Doc. No. 446), and Samantha Collins and Thomas Branum filed speedy trial waivers (Doc. Nos. 449; 461). The Court determined an ends of justice continuance was necessary, based on the following facts: Mr. Williams and Mr. Pollard filed then-pending motions seeking appointment of new counsel (Doc. Nos. 393; 454), and counsel for Mr. Smith represented that discovery in the form of "hundreds of hours of phone calls" remained outstanding from the Government and was expected to be provided within two weeks of the trial date. (*See* Doc. No. 440.) The Court subsequently rescheduled the trial for November 8, 2011. (Doc. No. 576.)

On October 14, 2011, a Defendant filed a sealed motion to continue trial. (Doc. No. 693.) The Court granted the motion and continued the trial to April 17, 2012, to serve the ends of justice because the Government had obtained the Seventh Superseding Indictment less than three weeks before the start of trial, and the Indictment joined five new defendants and ten new counts to the case that—at the time of the Order—remained partially under seal. (*See* Doc. No. 724.)

Beginning in late March 2012, the Court received motions to continue the April 17 trial date from ten Defendants. (Doc. Nos. 990; 1005; 1014; 1015; 1027; 1038; 1054; 1055; 1057; 1065.) The Court granted the motions and continued the trial date to August 14, 2012, finding

the ends of justice required a continuance based on the following facts: (1) Mr. Carey was scheduled for trial in state court the day before trial was to begin; (2) at the time of the Order, two Defendants had been represented by counsel in the case for less than eight weeks, including Mr. Campbell, who was first arraigned six days before the trial date; (3) Mr. Baugh filed two motions to dismiss less than two weeks before the Order, and they remained pending at the time of the continuance; (4) the Government had filed responses to numerous pending defense motions eleven days before the trial date; and (5) Mr. Moody had requested appointment of new counsel less two weeks before the trial date. (*See* Doc. No. 1064.)

On August 2, 2012, Mr. Carey filed a motion to continue the August 14 trial date. (Doc. No. 1210.) Additional motions to continue were subsequently filed by Ms. Coleman, Mr. Coleman, Mr. Campbell, and Mr. Lee. (Doc. Nos. 1219; 1221; 1228; 1230.) The Court granted Mr. Carey's motion and continued the trial to January 29, 2013, to serve the ends of justice, finding that: (1) Mr. Carey and other Defendants were not yet ready for trial and had not received complete discovery from the Government; (2) numerous pretrial motions were still pending before the Court, including a motion to dismiss filed by Mr. Baugh three days before the trial date; and (3) at least two Defendants had represented that they were in plea negotiations with the Government. (*See* Doc. No. 1241.)

### 2. Pretrial Motions and Hearings

To date, Defendants have filed more than 400 motions in this case, including thirteen motions to dismiss (Doc. Nos. 649; 992; 994; 1002; 1104; 1166; 1236; 1400; 1474; 1489; 1566; 1582; 1646), thirty-five motions for appointment of new counsel (Doc. Nos. 197; 253; 289; 344; 362; 372; 373; 393; 454; 463; 481; 516; 552; 568; 619; 675; 682; 695; 763; 779; 787; 806; 820; 829; 845; 909; 948; 1007; 1109; 1165; 1211; 1298; 1299; 1345; 1354), and more than eighty

pretrial and evidentiary motions (Doc. Nos. 415; 417; 419; 421; 423; 425; 469; 566; 604; 653; 656; 926; 933; 935; 937; 939; 941; 969; 970–972; 977; 1032; 1115–16; 1126–29; 1131; 1142–45; 1169; 1177–83; 1224; 1227; 1361; 1366; 1412; 1420; 1479; 1534; 1545–46; 1548; 1554; 1565; 1568–69; 1573; 1610; 1620–22; 1675; 1686; 1689–90; 1700–1706; 1725; 1735–37). In addition, the Court has held approximately fifty hearings to address Defendants' concerns and motions, not including detention reviews. (*See* Doc. Nos. 383; 390; 435; 450; 470; 489; 497; 507; 533; 538; 547; 553; 560; 592; 594; 672; 679; 715; 776; 784–85; 794; 877; 862; 915; 923; 985; 998; 1023; 1153; 1164; 1223; 1251; 1254; 1310; 1314; 1351; 1368; 1374; 1495; 1497; 1499; 1504; 1541; 1605; 1634; 1684.)

     *C.  Motions to Dismiss for Speedy Trial Violations*

     Mr. Harris filed the first Motion to Dismiss for Speedy Trial Violations on May 21, 2012 (Doc. No. 1104), with a Memorandum in Support (Doc. No. 1105). The Government filed a Response to Mr. Harris's Motion to Dismiss on July 26, 2012. (Doc. No. 1204.) Mr. McQuiddy filed the next Motion to Dismiss for Speedy Trial Violations on October 29, 2012 (Doc. No. 1400), with a Memorandum in Support (Doc. No. 1404), adopting and expanding upon Mr. Harris's Motion to Dismiss. Mr. Whitmon filed a Memorandum in Support of Mr. Harris's Motion to Dismiss on November 5, 2012. (Doc. No. 1413.) On November 19, 2012, Mr. McQuiddy and Mr. Baugh jointly filed an Amended Motion to Dismiss (Doc. No. 1464), with Mr. Baugh's Memorandum in Support (Doc. No. 1466), that further expands upon Mr. McQuiddy's first Motion to Dismiss and Mr. Harris's Motion to Dismiss. Ms. Young filed the next Motion to Dismiss for Speedy Trial Violations on November 26, 2012 (Doc. No. 1474), with a Memorandum in Support (Doc. No. 1475), adopting all previously filed Motions to Dismiss and Memoranda. Mr. Williams filed the most recent Motion to Dismiss for Speedy

Trial Violations on November 28, 2012 (Doc. No. 1489), with a Memorandum in Support (Doc. No. 1490), adopting the facts from Mr. McQuiddy's Memorandum in Support (Doc. No. 1404). Mr. Harris filed a second Memorandum in Support on December 14, 2012. (Doc. No. 1531.) The Court held a hearing on the Motions on December 17, 2012, at which time it took the Motions under advisement. (Doc. No. 1634.)

## II. ANALYSIS

The Court will first address the alleged violations of Defendants' speedy trial rights with respect to the Speedy Trial Act, then with respect to the Sixth Amendment, and finally with respect to Federal Rule of Criminal Procedure 48(b). Mr. McQuiddy and Mr. Harris were the only Defendants to allege specific periods of time that violated the STA. However, as other Defendants have joined their arguments, the Court asserts that its reasoning regarding Mr. Harris and Mr. McQuiddy applies equally to the other Defendants captioned in this Order.

### A. The Speedy Trial Act

The Speedy Trial Act ("STA") provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1) (2012). If the defendant is not brought to trial within the time limit set forth by the STA, the indictment "shall be dismissed on motion of the defendant." *Id.* § 3162(a)(2). The seventy-day period is subject to exclusions for certain pretrial delays listed in § 3161(h), and the burden falls on the defendant to allege the time periods that comprise non-

9

excludable time in violation of § 3161(c)(1).  *See United States v. Pelfrey*, 822 F.2d 628, 634 (6th Cir. 1987) (citing § 3162(a)(2)).

           1.      <u>Speedy Trial Clock Violations Asserted by Mr. Harris</u>

Mr. Harris makes two arguments regarding the STA.  First, he alleges that the time from the filing of the Fifth Superseding Indictment until the current trial date amounts to more than seventy non-excludable days.  (Doc. No. 1105 at 4–5)  Second, he alleges that, even if seventy non-excludable days have not elapsed with respect to charges filed against him in the Seventh Superseding Indictment, delay due to the addition of co-defendants is unreasonable.  (Doc. No. 1105 at 5–6.)

           (a) Days Excludable based on Continuances

Mr. Harris argues that his speedy trial clock with respect to Counts 13, 14, and 18[1] expired during the 195 days between the filing of the Fifth and Sixth Superseding Indictments.  (Doc. No. 1105 at 5.)  Because the speedy trial clock does not reset upon the filing of a superseding indictment, Mr. Harris argues that the speedy trial clock that governs Counts 13, 14, and 18, has run uninterrupted since May, 27, 2010, when the Fifth Superseding Indictment was filed.  (*Id.* at 4–5; Doc. No. 1531 at 2.)  Further, Mr. Harris argues that the speedy trial clock governing Counts 5, 6, 15, 16, and 17 has run continuously from October 19, 2011, when the Seventh Superseding Indictment was filed.  (*Id.*)  Therefore, more than seventy non-excludable days have elapsed with respect to these charges also violating the STA.  (*Id.*)

The Government responds that (1) because Mr. Harris is joined with twenty-seven co-Defendants, the speedy trial clock of the last-joined Defendant governs Mr. Harris; (2) all periods of time between when a defendant files and when the Court rules on a motion are

---

[1] In the Fifth Superseding Indictment, these charges were labeled Counts 11, 12, and 18.  (Doc. No. 130-16.)  The Court will refer to all charges as they are numbered in the Ninth Superseding Indictment (Doc. No. 1409), which is the current charging instrument.

excluded under the STA; and (3) the period of time for a continuance granted by a court to serve the ends of justice is excluded, and the Court's designation that this case is "extended and complex" may be considered as a factor in deciding whether the ends of justice are served. (Doc. No. 11 at 10–12.)

The STA states that a defendant must be brought to trial within seventy days of the filing of an indictment or the defendant's first appearance before a judicial officer, *whichever is later*. 18 U.S.C. § 3161(c)(1). The Sixth Circuit construes the term "appear" to mean "arraignment," or when the defendant enters a plea of not guilty. *United States v. O'Dell*, 154 F.3d 358, 360–62 (6th Cir. 1998) ("The plain meaning of the language of the STA requires a not guilty plea to begin the clock running.") While the first indictment on which Mr. Harris was arraigned was filed on May 27, 2010 (Doc. No. 130), Mr. Harris was not arraigned until September 2, 2010 (Doc. No. 249). The day of arraignment is excluded from the seventy-day period, *United States v. Mentz*, 840 F.2d 315, 326 (6th Cir. 1988); therefore, the earliest Mr. Harris's speedy trial clock could have started to run was September 3, 2010.

However, the Court finds that Mr. Harris's speedy trial clock did not actually begin to run until long after his arraignment. The Sixth Circuit has held that "[w]here multiple defendants are charged in an indictment and no motion for severance has been granted, only one speedy trial clock governs the action," *United States v. Culpepper*, 898 F.2d 65, 66 (6th Cir. 1990), and "[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest co-defendant." *United States v. Blackmon*, 874 F.2d 378, 380 (6th Cir. 1989) (citing *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986)).

Here, Mr. Harris was joined with seventeen other Defendants in the Fifth Superseding Indictment. (Doc. No. 130.) The last Defendant to be arraigned was Mr. Baugh, on January 7,

2011 (Doc. No. 364), after the Grand Jury returned the Sixth Superseding Indictment. Therefore, the Court finds that the 195 days between May 27 and December 8, 2010, that Mr. Harris alleges were included in his speedy trial clock, were excludable. Mr. Harris was governed by the same speedy trial clock as his co-Defendants, therefore his clock did not begin to run before January 8, 2011, the day after Mr. Baugh's arraignment.

However, Mr. Harris's speedy trial clock actually started later than Mr. Baugh's arraignment. The Court finds persuasive the District of Columbia Circuit's holding that "[t]he Speedy Trial Act excludes delay attributable to resetting a defendant's speedy trial clock upon the addition of a co-defendant so that the government will not be forced to choose between prosecuting defendants separately and violating the Speedy Trial Act." *United States v. Van Smith* 530, F.3d 967, 972 (D.C. Cir. 2008). This "resetting" of a defendant's speedy trial clock is not conditioned on whether the superseding indictment—which adds new defendants—also changes the charges against the original defendant. *Id.* (citing *United States v. Casas*, 425 F.3d 23, 31 (1st Cir. 2005) ("The Supreme Court has interpreted [§ 3161(h)(7)] to mean that the clock does not, in effect, begin to run until the date of the most recent defendant's initial appearance before the court.")). The Sixth Circuit recently applied the standard from *Van Smith* in *United States v. Smith*, No. 11-5520, 2013 WL 58444, at *3 (6th Cir. Jan. 7, 2013) (finding that upon the arraignment of the last co-defendant, "the speedy trial clock for [the previously arraigned defendants], ran anew").

Here, this Court finds that, at the time of arraignment of newly added co-Defendants in this case, all of Mr. Harris's charges were reset to align with the speedy trial clock of the most recently added Defendant. Under *Van Smith* and *Smith*, Mr. Harris's speedy trial clock was reset when newly joined Defendants were arraigned. The last Defendant joined for trial in this case,

Mr. Campbell, was not arraigned until April 11, 2012. (Doc. No. 1058.) Therefore, the Court finds the speedy trial clock for all joined Defendants was reset on April 12, 2012.

The STA excludes from a defendant's speedy trial clock "[a]ny period of delay resulting from a continuance granted by any judge . . . on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (2012). Although the STA states that time will be excludable only if the district court gives reasons on the record for finding that the ends of justice are served by granting the continuance, the Supreme Court has held that the district court's reasons may be stated on the record anytime up to the point when it rules on a defendant's motion to dismiss for STA violations. *Zedner v. United States*, 547 U.S. 489, 507 (1976).

While more than seventy days have elapsed between April 12, 2012, and the current trial date of January 29, 2013, once Mr. Harris's speedy trial clock started on April 12, 2012, it was immediately tolled by the Court's Order of the same date that continued the trial to serve the ends of justice. The Court based its order on: (1) Mr. Carey's state court trial scheduled to begin the day before trial in this Court; (2) Mr. Campbell's need for preparation time, given that he had been arraigned only five days before trial; (3) Mr. Baugh's two pending motions to dismiss, which were filed two weeks before the Court's Order; (4) numerous pending pretrial motions, to which the Government had filed responses less than two weeks before trial; and (5) nine Defendants' motions to continue, largely based on unavailability of counsel due to another trial in progress before Judge Haynes. (Doc. Nos. 990; 1005; 1014; 1015; 1027; 1038; 1054; 1055; 1057; 1065.) Accordingly, from April 12 to August 14, 2012, the new trial date, no includable days accrued under Mr. Harris's speedy trial clock.

13

The Court granted another ends-of-justice continuance before the August 14 trial date, based on motions to continue filed by Mr. Carey, Ms. Coleman, Mr. Campbell, and Mr. Lee (Doc. No. 1241), and following the facts: (1) Mr. Carey, among other Defendants, was not ready for trial as he had not received complete discovery from the Government; (2) numerous pretrial motions remained pending before the Court, including a motion to dismiss filed by Mr. Baugh three before the trial date; and (3) two Defendants represented that they were in plea negotiations with the Government. (Doc. Nos. 1219; 1221.) Therefore, the time from August 14, 2012, to January 29, 2013, is also excludable under § 3161(h)(7)(A). Based on these exclusions, no days accrued on Mr. Harris's seventy-days clock. Thus, the Court finds no STA violation has occurred.

Although no further inquiry is necessary to satisfy the STA, the Court will address Mr. Harris's reasonableness argument, because—contrary to Mr. Harris's suggestion—delays occasioned by defense motions support the Court's determination that Mr. Harris's STA rights have not been violated.

### (b) Delays based on Mr. Harris's Motions

While Mr. Harris does not address whether motions he has filed have contributed to the delay in his trial, the Court finds that substantial periods of excludable time are attributable to him. Under the STA, "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded from the seventy-day statutory period. 18 U.S.C. § 3161(h)(1)(D). The Sixth Circuit has interpreted this provision to distinguish between motions that do and do not require a hearing. *Mentz*, 840 F.2d at 326. For motions requiring a hearing, the time between filing the motion and the conclusion of the hearing is automatically excluded under § 3161(h)(1)(D), as is

14

any time after the hearing during which the court is awaiting supplemental filings from the parties. *Id.* (citing *Henderson*, 476 U.S. at 329, 331). Once the hearing is concluded and all filings have been submitted, there must be "prompt disposition" of the motion, which is limited to a maximum of thirty days during which the motion is "actually under advisement," according to § 3161(h)(1)(J). *Id.* For motions not requiring a hearing, time is automatically excluded from the date the motion is filed to the date all responses and other filings are submitted. *Id.* (citing *Henderson*, 476 U.S. at 331.) Once all relevant filings have been made, and if no additional submissions are required, the rules for "prompt disposition" apply, excluding a maximum of thirty days when the motion is "actually under advisement" under § 3161(h)(1)(J). *Id.* (citing *Henderson*, 476 U.S. at 329.)

Here, on May 21, 2012, Mr. Harris filed the instant Motion to Dismiss, to which the Government responded on July 26, 2012 and for which the Court held a hearing on December 17, 2012. Because all time between the filing of a motion and the conclusion of the hearing is automatically excluded, all days from May 21 through December 17, 2012, are excludable. *See Mentz*, 840 F.2d at 326; *United States v. Keefer*, 799 F.2d 1115, 1121–22 (6th Cir. 1986). Further, the time period from December 18, 2012, through January 17, 2013, is excludable under § 3161(h)(1)(J) because the Motion was "actually under advisement" during this thirty-day period. On December 31, 2012, Mr. Harris filed a separate motion to dismiss Count 43 on grounds of vindictive prosecution. (Doc. No. 1566.) The Government responded on January 18, 2013 (Doc. No. 1682), at which time the Court took the motion under advisement. Therefore, only thirty-nine days have passed since the speedy trial clock was tolled due to Mr. Harris's own motions: from April 12 through May 21, 2012. As explained above, the initial thirty-nine days

15

occurred during the period tolled by the Court's decision to continue trial to serve the ends of justice.

Therefore, the Court concludes that no days have accrued under Mr. Harris's speedy trial clock, and no violation of the Speedy Trial Act has occurred.

### (c) Reasonableness of Delay Based on Joinder

Mr. Harris's second argument focuses on the reasonableness of the delay in his trial based on joinder of co-Defendants. (Doc. No. 1105 at 5.) Specifically, Mr. Harris argues that any delay in his trial that is attributable to the addition of co-Defendants is unreasonable and not excludable under § 3161(h)(6). (*Id.* at 5–7.) Thus, he concludes that based on the unreasonableness of the delay, all charges against him should be dismissed. (*Id.* at 5.)

The STA excludes "a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). The Sixth Circuit has allowed for reasonable delays under the STA due to: co-defendant motions to withdraw legal counsel, *Culpepper*, 898 F.2d at 68; co-defendant interlocutory appeals, *United States v. Holyfield*, 802 F.2d 846, 848 (6th Cir. 1986); and multiple pretrial motions filed by co-defendants, *United States v. Monroe*, 833 F.2d 95, 100 (6th Cir. 1987).

There are an abundance of excludable days in this case, similar to those upheld as reasonable by the Sixth Circuit. Mr. Harris's co-Defendants have filed more than 400 motions in this case. The Court has held eighteen hearings on motions for appointment of new counsel, and taken under advisement and ruled on six motions to dismiss. Therefore, the Court finds Mr. Harris has not offered sufficient evidence that the delays in this case attributable to Mr. Harris's co-Defendants are unreasonable.

16

2.    Speedy Trial Clock Violations Asserted by Mr. McQuiddy

Mr. McQuiddy alleges STA violations based on three separate speedy trial clocks he argues ran for different groups of counts with which he is charged.  Mr. McQuiddy states that his first speedy trial clock—for Counts 19 and 20—began on April 23, 2010, when the last co-Defendant charged in those counts was arraigned, and that the seventy-day period lapsed on December 9, 2011.  (Doc. No. 1404 at 73.)  Mr. McQuiddy next claims a separate speedy trial clock applies to Counts 13 and 14 and began on June 14, 2010, when the last co-Defendant charged in those counts was arraigned.  (*Id.* at 73–74.)  Seventy non-excludable days with respect to this second clock also lapsed on December 9, 2011, according to Mr. McQuiddy.  (*Id.*)  Lastly, Mr. McQuiddy argues a third speedy trial clock ran for Counts 15 to 17, which began on January 26, 2012, and expired on April 7, 2012.  (*Id.* at 74.)  In the alternative, Mr. McQuiddy argues that if the Court finds that the speedy trial clock did not start on January 26—based on the Court's ends-of-justice continuance until April 17, 2012—then the clock started on April 17, 2012, and seventy non-excludable days elapsed as of June 27, 2012.  (*Id.*)

For the same reasons stated above that Mr. Harris's speedy trial clock did not start until April 12, 2012, the Court finds that all co-Defendants' speedy trial clocks were reset on that date.  All Defendants in this matter were joined with Mr. Campbell at the time of his arraignment, and the Eighth Superseding Indictment under which Mr. Campbell was arraigned includes all charges previously pending against the other Defendants in this case.  Therefore all Defendants are governed by Mr. Campbell's speedy trial clock, which did not start to run until the day after his April 11, 2012 arraignment.

Under *Van Smith* and *Smith*, once Mr. Campbell's arraignment reset the speedy trial clock in this case, all of Mr. McQuiddy's charges were subject to a single clock.  Moreover, once

17

the speedy trial clock began, it was tolled for all Defendants based on the ends-of-justice continuances described above. Further, while the Court has set forth sufficient grounds to find that the STA was not violated, the Court's finding is confirmed by Mr. McQuiddy's pretrial motions. Mr. McQuiddy filed a motion on June 8, 2012—fifty-seven days after the start of his speedy trial clock—to join Mr. Harris's Motion to Dismiss, addressed by this order. (Doc. No. 1125.) This action allowed Mr. McQuiddy's speedy trial clock to be tolled along with Mr. Harris's, with respect to delays attributable to Mr. Harris's Motion. As with Mr. Harris, Mr. McQuiddy filed a motion to dismiss for vindictive prosecution on January 2, 2013 (Doc. No. 1582), to which the Government responded on the same day (Doc. No. 1586), and from which time the Court has taken under advisement. The speedy trial clock for Mr. McQuiddy, therefore is an identical calculation as Mr. Harris's, and all Defendants are subject to the same excludable delays. Thus, the Court finds that no days have accrued towards the Defendants' speedy trial clock, and no violation of the Speedy Trial Act has occurred.

   *B. Constitutional Right to a Speedy Trial*

   The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." The Supreme Court has identified four factors to be weighed in evaluating a speedy trial claim under the Sixth Amendment: (1) the length of the delay; (2) the reason for the delay, or "whether the government or the criminal defendant is more to blame for that delay"; (3) whether the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001) (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)). The Court has stressed that the Sixth Amendment inquiry necessarily must turn on the facts of the case at hand, *Barker*, 407 U.S. at 530, and has

18

recognized that courts must be granted "the flexibility to take account of the competing concerns of orderly appellate review on the one hand, and a speedy trial on the other." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986).

Relying on Ninth Circuit precedent, the Sixth Circuit determined that "[a]lthough the government's compliance with the Speedy Trial Act does not bar future Sixth Amendment speedy trial provision claims, 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated.'" *United States v. O'Dell*, 247 F.3d 655, 666–67 (6th Cir. 2001) (citing *United States v. DeJesus*, 887 F.2d 114, 116 (6th Cir. 1989)). As the Ninth Circuit has explained, "the Speedy Trial Act affords greater protection to a defendant's right to a speedy trial than is guaranteed by the Sixth Amendment, and therefore a trial which complies with the Act raises a strong presumption of compliance with the Constitution." *United States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995).

The Court addresses Defendants' Sixth Amendment arguments under the four *Barker* factors, while considering the weight of the STA analysis above. Because the majority of the above-captioned Defendants have adopted the arguments set forth in Mr. McQuiddy's Memorandum in Support, the Court draws mainly from that document to define arguments made by Defendants. Where Defendants have made arguments independent of Mr. McQuiddy's Memorandum, the Court addresses them separately.

### 1. Length of the Delay

Mr. McQuiddy argues that the length of delay in this case raises a presumption of prejudice because the current trial is scheduled to begin more than three years after his arrest on December 18, 2009. (Doc. No. 1040 at 44.) Mr. McQuiddy states that because the Supreme Court and the Sixth Circuit have held that delays approaching one year are presumptively

19

prejudicial, the delay of more than three years in this case is more than sufficient to satisfy *Barker*. (*Id.*) In addition, Mr. Williams alleges that his delay should be measured from October 29, 2009, the date he was arrested on charges stemming from a separate case, which was eventually dropped in favor of his indictment in the current case. (Doc. No. 1490 at 2.)

The Supreme Court determined that length of delay is a threshold issue. To trigger a speedy trial analysis, a defendant must make a prima facie showing that the length of delay in being brought to trial was "presumptively prejudicial," otherwise the inquiry ends. *Doggett*, 505 U.S. at 651–52. "The length of delay is measured from the date of indictment or the date of the arrest, whichever is earlier." *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005). Both the Supreme Court and the Sixth Circuit have recognized that a delay approaching one year meets the presumptive prejudice threshold to allow analysis of the remaining three *Barker* factors. *Doggett*, 505 U.S. at 652; *Maples*, 427 F.3d at 1026.

Here, all above-captioned Defendants are scheduled for trial more than one year following their arrests. Mr. McQuiddy and Mr. Williams have experienced the longest delays of more than three years between arrest and trial; however, even the newest of the above-captioned Defendants, Mr. Johnson, was arrested more than one year ago on January 4, 2012. Because Defendants will not be brought to trial before January 29, 2013, the Court finds they have satisfied the threshold for showing a presumption of prejudice in the length of delay for trial.

### 2. Reason for the Delay

Mr. McQuiddy argues that the Court and the Government bear the majority of responsibility for the delays in this case, based on: (1) the Government continuously filing superseding indictments that added new Defendants who were unprepared for trial; (2) delay in the Government providing Defendants with discovery and responding to Defendants' motions;

and (3) the Court's failure to rule efficiently on motions, set deadlines, and hold status conferences to move the case towards trial. (Doc. No. 1404 at 48.)

When considering reasons for delay attributable to the Government, the Court weighs delays motivated by "bad faith, harassment, or attempts to seek a tactical advantage" more heavily against the Government than more neutral reasons such as "negligence or overcrowded dockets." *Maples*, 427 F.3d at 1026; *see also Barker*, 407 U.S. at 531. Valid Government reasons for delay, or delays attributable to the defense are considered justified. *Barker*, 407 U.S. at 531.

In this case, while the Court agrees that filing superseding indictments—as well as delayed responses and rulings on motions—contributed to the delay in Defendants going to trial, Mr. McQuiddy fails to account for the voluminous motions filed and hearings requested by the majority of Defendants, including Mr. McQuiddy. Mr. McQuiddy has filed or joined two motions to continue trial, more than twenty evidentiary motions, three motions to dismiss, and two motions to have his detention reviewed, as well as multiple motions for case budgeting, and other minor issues. While this is not highlighted to fault Mr. McQuiddy for filing motions, the Court finds that the volume of motions filed by Mr. McQuiddy—as well as the other twenty-seven total Defendants—accounts for a significant portion of the delay in this case. Continuances in this case were prompted by motions filed Mr. McQuiddy and other Defendants. The Court's ends-of-justice reasons for continuing trial sought to address concerns over Defendants receiving a fair trial, based factors such as continuity of counsel and adequate consideration of Defendants' numerous motions and letters–in which Defendants made numerous requests, including but not limited to: dismissal, access to listening devices, and transfer from various detention facilities. Further, while the Court agrees that the Government's

21

use of superseding indictments may not have been efficient, the Government is afforded

discretion in how it prosecutes cases. Without more than speculation on the part of Mr.

McQuiddy, the Court cannot find that the Government acted in bad faith or negligently in

charging Defendants. The Court finds that the STA analysis in this case shows that Defendants

have shared responsibility with the Government and the Court for the delay in this case, and that

delays attributable to the Government and the Court were justified given the complexity of the

case.

### 3. Defendants' Assertion of Their Right to a Speedy Trial

Mr. McQuiddy asserts that he has vigorously asserted his right to speedy trial by filing

and joining several motions, including: motions for severance from any Defendants not ready for

trial, motions for detention review, objections to continuances of trial, and motions to dismiss for

speedy trial violations. (Doc. No. 1404 at 58–61.) In addition, Mr. Williams argues that he has

asserted his right to a speedy trial through multiple motions and notices similar to those of Mr.

McQuiddy. (Doc. No. 1490 at 3–4.)

"Whether and how a defendant asserts his right is closely related to the other factors . . . .

The strength of his efforts will be affected by the length of the delay, to some extent by the

reason for the delay, and most particularly by the personal prejudice . . . that he experiences."

*Barker*, 407 U.S. at 531. A defendant's direct assertions requesting a speedy trial, attempts to

have his case severed, and requests for bail are viewed as invocations of the defendant's Sixth

Amendment speedy trial rights. *Maples*, 427 F.3d at 1029–30; *Redd v. Sowders*, 809 F.2d 1266,

1271 (6th Cir. 1987).

Here, Mr. McQuiddy and other above-captioned Defendants invoked their speedy trial

rights through severance motions, speedy trial motions, detention review motions, and the instant

Motions to Dismiss. However, in contrast with cases cited by Mr. McQuiddy, the above-captioned Defendants in this case also filed ten motions to continue and eighteen motions for new counsel. As the Supreme Court stated in *Loud Hawk*, Defendants' speedy trial assertions "must be viewed in the light of [their] other conduct." 474 U.S. at 314. While Defendants' conduct in this case does not appear to evince bad faith as the Court in *Loud Hawk* found, it does paint a more complex scenario than one in which a defendant unwaveringly argues for—and is denied—his right to a speedy trial. Defendants here have taken affirmative steps to delay trial at various points throughout the case. The Court finds that, while Defendants' assertions of their speedy trial rights lend support to their claims, they do not weigh strongly in favor of dismissal, in light of Defendants' conduct viewed as a whole throughout the case.

4. Prejudice Caused by Delay

Mr. McQuiddy asserts that he is entitled to a presumption of prejudice because the conduct of the Court and the Government—which led to the delays in this case—was so egregious that it amounted to bad faith. (Doc. No. 1404 at 64–65.) Mr. McQuiddy also alleges actual prejudice, based on his requests for release from "odious and oppressive" pretrial incarceration and the frequency with which he has asserted his speedy trial rights. (*Id.* at 65.) Mr. Whitmon expands upon Mr. McQuiddy's arguments by calling the Court's attention to a letter written by Mr. Whitmon, that details the conditions of his pretrial incarceration and the anxiety caused by the loss of familial relations, worry over mounting child support debt, and fear for his physical safety. (Doc. No. 1413 at 2–3.) Mr. Whitmon also argues that he has suffered actual prejudice, as his defense has been impaired by the death of Mr. Whitmon's grandfather during the pendency of proceedings. (*Id.* at 5.) Mr. Whitman states that he lived with his grandfather at the time of the crimes alleged, and that his grandfather's home was searched and

evidence seized in relation to this case. (*Id.*) Therefore, Mr. Whitmon argues that his grandfather was a potential witness, and the inability to call him actually prejudices Mr. Whitmon's defense. (*Id.*)

The Court analyzes the prejudice prong under the three main interests that the right to speedy trial was meant to protect: (1) prevention of oppressive pretrial incarceration; (2) avoiding anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* It is possible for a delay to prejudice the Government as well as a defendant because "[i]t is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden." *Loud Hawk*, 474 U.S. at 315.

Prejudice can be presumed or in fact. While the defendant carries the burden to show "substantial prejudice," *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993), "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655. Because it can be difficult to prove objective impairment of one's defense, the Supreme Court has recognized that "excessive delay presumptively compromises the reliability of trial." *Id.* (citing *Barker*, 407 U.S. at 532). To determine whether a delay is presumptively prejudicial, courts look to determination under the reason for the delay prong. *Maples*, 427 F.3d at 1030.[2]

Here, while Mr. McQuiddy argues that delay was caused by bad faith of the Government and the Court, under the Court's reason for the delay analysis above, the Court cannot agree. A presumption of prejudice does not exist, because Defendants have been largely responsible for

---

[2] "[P]resumptively prejudicial' for the purposes of triggering the *Barker* four-factor inquiry is different from 'presumptively prejudicial' for purposes of assessing the prejudice prong. The first only requires that the delay have approached one year. The latter concerns whether the delay was excessive." *Maples*, 427 F.3d at 1030.

24

the delay, and the delay that was caused by the Government and the Court has not been due to negligence or bad faith, and therefore has not been excessive. Because the facts do not lead to a presumption of prejudice in this case, the Court assesses Defendants' argument that they have been actually prejudiced by the pretrial delay.

In Addition, the Court finds Defendants have not alleged sufficient actual prejudice. While Mr. McQuiddy's claim of actual prejudice fairly addresses the first two interests protected by the right to a speedy trial, the Court finds his failure to allege a possibility that his defense will be impaired is problematic. Mr. McQuiddy's argument that his pretrial incarceration has been oppressive is supported by his attempts to secure release. Further, the various assertions of his speedy trial right demonstrate that Mr. McQuiddy is anxious and concerned about his case. However, Mr. McQuiddy fails to address the most important interest that the Sixth Amendment right to speedy trial was meant to protect, the possibility of impairment of his defense. *See Barker*, 407 U.S. at 534 (finding that while the defendant's liberty interests were jeopardized by lengthy pretrial incarceration, the prejudice suffered by the delay was minimal because "there is no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay.")

In addition, the two Sixth Circuit cases Mr. McQuiddy cites in support of his "actual prejudice" argument are distinguishable from this case. Both cases found actual prejudice based on a demonstration of specific facts by defendants that *all three* speedy trial interests had been harmed by delays in their trials. *See Maples*, 427 F.3d at 1032 (finding the defendant's allegation that two key witnesses were unavailable to testify presented a sufficient possibility of impairment of the defense); *Redd*, 809 F.2d at 1272 (finding the defendant's claim of impairment based on the inability to locate alibi witnesses was sufficient where defendant had stated shortly

25

after arrest that he had been out of the state during the time of the crime, and that he had witnesses to support his claim). Moreover, in *Maples*, the Sixth Circuit specifically determined that the prejudice factor weighed in favor of the defendant because the defendant "was prejudiced *both* by the offense to his liberty interests as well as by impairment to his defense." 427 F.3d at 1034 (emphasis added). Taking guidance from these cases, the Court finds that, while Mr. McQuiddy has suffered actual prejudice based the pretrial delay in this case going to trial, the prejudice was not substantial, as Mr. McQuiddy has not alleged any possible impairment to his defense.

Mr. Whitmon, on the other hand, has alleged that his defense was impaired due to the length of delay in this case going to trial. (Doc. No. 1413 at 2–3.) The death of a potential witness is undoubtedly an impairment to the defense; however, Mr. Whitmon's argument lacks the factual backing for the Court to determine that the death of Mr. Whitmon's grandfather amounted to actual prejudice. For instance, Mr. Whitmon does not indicate when his grandfather died, does not put forth any evidence that he had planned to call his grandfather as a witness prior to his grandfather's death, nor does he indicate how his grandfather's testimony would have assisted his case. Without more than a bare assertion that a possibly relevant witness died during the case's pendency, the Court finds Mr. Whitmon has suffered no more actual prejudice than Mr. McQuiddy.

While the length of delay in this case is presumptively prejudicial and the Defendants have asserted their rights to a speedy trial, the reasons for delay are largely attributable to Defendants, themselves, and no substantial prejudice from the delay has been shown. Thus, base on the four *Barker* factors, the Court finds that the delay in this case has not violated Defendants' speedy trial rights under the Sixth Amendment. Defendants have not presented any facts that

make this case the "unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated." *Odell*, 247 F.3d at 666; *see DeJesus*, 887 F.2d at 116 n.1.

### C. Federal Rule of Criminal Procedure 48(b)

Federal Rule of Criminal Procedure 48(b) codifies a court's inherent authority to dismiss a case for unnecessary delay. Pursuant to its authority under Rule 48(b), "[t]he court can dismiss whenever there has been unnecessary delay without being required to decide whether the delay was of such a nature as to deprive the defendant of a constitutional right." 3A Wright & Miller Ch. 11 § 814.

In deciding whether to exercise the 48(b) dismissal power, courts generally look to the *Barker* four-factor test, to evaluate whether a defendant has been deprived of his Sixth Amendment right to a speedy trial. *See, e.g., United States v. LaBorde*, 496 F.2d 965, 967 (6th Cir. 1974); *United States v. Houston*, 450 F. Supp. 131, 133 (E.D. Tenn. 1978) ("Whether the test is phrased in terms of the Sixth Amendment or Rule 48(b), the Court must evaluate defendant's speedy trial claim in light of the guidelines adopted by the Supreme Court in *Barker v. Wingo*.").

Here, Defendants concede that dismissal under Rule 48(b) would be appropriate only on the same grounds as dismissal under the Sixth Amendment right to speedy trial or the STA. (Doc. No. 1404 at 43.) Therefore, for the same reasons that the Court finds dismissal is not appropriate under either the Sixth Amendment right to speedy trial or the STA, the Court finds dismissal is not appropriate under Rule 48(b).

### III. CONCLUSION

For the foregoing reasons, the Motions to Dismiss for Speedy Trial Violations (Doc. Nos. 1104; 1400; 1464; 1474; 1489) are **DENIED**.

It is so ORDERED.

Entered this the ___28___ day of January, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT